41488.   OXFORD CONSTRUCTION COMPANY v.
CITY OF ALBANY et al.

ARGUED OCTOBER 5, 1965—DECIDED OCTOBER 25, 1965—
REHEARING DENIED NOVEMBER 18, 1965.

*Watson, Keenan, Spence & Lowe, G. Stuart Watson,* for plaintiff in error.

*H. G. Rawls, Divine & Busbee,* contra.

EBERHARDT, Judge. Do the allegations of this petition raise any duty on the part of Oxford Construction Company to make inquiry of the manager of the city's gas section or to go to his office in search of information and there examine a wall map concerning the location of any possible underground utility line? Is the notation on the engineers' plans sufficient to put Oxford on inquiry to the extent of seeking information from the city or from the South Georgia Natural Gas Company as to the location of that company's underground supply line?

We must consider all allegations of the petition in seeking the answer to these questions. Thus we observe that it is alleged that the engineers failed to locate the presence of the gas line across the right of way of the drainage canal, and the plans under which Oxford worked in digging the canal did not indicate its presence. It is alleged that South Georgia Natural Gas Company had failed to record its right of way or lease showing the location of the gas line and that it had placed no marker above the surface of the ground to indicate it. Thus, no examination of the public records of the county by Oxford would have disclosed any information as to its existence, and there could have been no failure on its part to observe markers or indications of the existence of the underground line—for they did not exist.

Could not the contractor, or his subcontractor, rely upon the engineers' plans to show what ought to have been shown in this respect? The plans and specifications reciting that they showed schematically the existing utilities, upon information furnished by the public utilities department of the city and no gas line appearing, did the plans, with the notation, place Oxford under any further duty to go to the superintendent of the city's gas section to make inquiry about things not shown? What would it have availed if Oxford had gone to examine a map showing the location of the *plaintiff city's* gas lines when the line in-

volved was not the city's, but that of South Georgia Natural Gas Company?

Unless the notation on the plans raised a duty on the part of Oxford to do these things or some of them, its demurrer should have been sustained. Let us examine the notation, and do so in the context of other allegations of the petition.

"Existing utilities shown on these plans are from maps and other information furnished by the City of Albany, Water, Gas and Light Department, Southern Bell Telephone & Telegraph Company, and others." There may have been *some* utilities shown on the plans (which are not a part of this record), but it is certain from the allegation that the engineers had failed "to locate the presence of the gas pipe line across the right of way of the drainage canal and not[e] the same upon the specifications" that no "existing" gas line was shown. The notation, pleaded and relied upon, indicates that the engineers had called upon the public utilities department of the plaintiff City of Albany for information relative to the location of utilities in the canal right of way area and that any information thus obtained had been entered on the plans. Was Oxford to suppose that the city officials had withheld from the engineers information relative to the location of the gas line? Could Oxford have expected to obtain from the city more or better information than it had furnished to the engineers for the preparation of plans? Could not Oxford rely upon the plans, and since these showed no gas line, assume that there was none?

"These are shown for information only and are schematic." If any gas line along or across the right of way of the canal to be excavated had been shown, then this statement would mean that the showing was of the general location as a matter of information. Schema is defined as meaning "a scheme, plan, outline or diagram; a general representation." Webster's International Dictionary, Unabridged (1961). That this is the correct meaning of this part of the notation is made clearly to appear by the sentence that follows: "It shall be the contractor's responsibility to determine the exact location of all utilities and protect the same—above and under ground—during construction." The engineers have said to the contractor, by the notation, that *ex-*

*isting* utilities have been shown on the plans according to information supplied by the city and by *general representation or design;* it is the duty of the contractor to locate these lines with *exactness.* This duty arose only as to the lines schematically shown. Certainly some utility lines must have been shown, or there would have been no occasion for the notation. But plaintiff asserts that the engineers *failed to note or show any gas line.* Was not the assertion that *existing* utilities were shown schematically an assertion that if not shown others did not exist?

A case dealing with the absence of any duty on the part of an independent contractor employed to grade or excavate an area to anticipate the presence of underground gas lines is *Perry v. Ready Mix Concrete Constr. Co.,* 66 Ga. App. 716 (19 SE2d 196). In that decision the court pointed out that when there is no house, building or structure on the premises to suggest the presence of a gas line no constructive knowledge of its existence underground is shown merely because the defendant may have known that there was a gas distribution system and that pipe lines were underground on various and sundry lots throughout the city. The court asserted that "no investigation less than actual digging could have detected the existence of a pipe line on the lot in question, it being eighteen inches underground." There plaintiff had alleged that the Georgia Power Company, which owned the gas lines, should have removed the line or capped it at the entrance to the lot. The court observed that if that were true "it could not have been expected of the defendant that it would anticipate that the Georgia Power Company had neglected its duty" and if, as was alleged, it was the duty of the power company to notify the defendant of the existence of the gas line on the lot, the defendant could not be expected to anticipate or even suspect its presence there.

If, as is alleged in the petition here, it was the duty of South Georgia Natural Gas Company to record its right of way or to erect along its gas line markers indicating presence of the pipe underground or to give actual notice of its existence, and it had failed in doing either of these, this defendant could not be expected to anticipate or suspect the existence of the line along the right of way, and all the more so since it appears that

the engineers, having secured from the city and others information as to the *existing* utilities, failed to show or note the gas line on the plans supplied to Oxford.

The court erred in overruling Oxford's general demurrer.

*Judgment reversed. Nichols, P. J., and Pannell, J., concur.*